U.S. COURTS

JUL 12 2023

Rcvd\_\_\_\_\_Filed\_\_\_\_AU  Time 9:50
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAUL RICHARDSON,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF VETERAN AFFAIRS and SECRETARY DENIS R. MCDONOUGH,<br><br>    Defendants. | Case No. 1:23-CV-00087-DCN<br><br>**PLAINTIFF MOTION TO AMEND PLEADING AS AGREED BY THE DEFENSE** |

Plaintiff filed statement of claim that he was passed over for a managerial job due to age and sex discrimination and that he was then given an unrealistic workload as a form of reprisal for engaging in a protective activity. The basis of these claims is covered under Title VII and ADEA. The plaintiff misstated the federal statue for the claim. Plaintiff stated the claims were covered under 42 USC 2000E-2; 42USC 2000 E-3 ; 29 USC 623 A ; 29 USC 623 D. These statues cover civilian employees and not federal government employees. Government employees are offered this same protection but under 29 USC 633A and 42USC 2000E-16; therefore, the plaintiff would like to amend his claim that the Basis of Jurisdiction is covered under 29 USC 633A and 42 USC 2000E-16. The basis of the claims remains the same (Plaintiff was discriminated based on age, sex and reprisal) which the court may grant relief. The defense and the plaintiff discussed this matter and the defense agreed that the plaintiff would be allowed to amend his claim. In return the plaintiff agrees to extend the time for the defense to respond IAW Rule 15. *The complaint must be liberally construed in the plaintiff's favor, and all facts pleaded*

*in the complaint must be taken as true. See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986), cert. denied, 476 U.S. 1159 (1986). This Court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of him claim which would entitle him to relief.*

In addition, the defense requested that it would be a tremendous help if I, the plaintiff, expanded / provided more detail on the basis of my claim which I agreed. My claims are as follows:

**Whether complainant was subjected to discrimination based on age and sex, as evidenced by the following events:**

1. On August 10, 2016, complainant was not selected for the position of Supervisory Contract Specialist (Supply), vacancy announcement #SAOW20-BGP-16VO1713619 because of the hiring policies of Scott Benza (SB), Director of Contracting.

2. On September 16, 2016, complainant was not selected for the position of Supervisory Contract Specialist (Services), vacancy announcement #SAOW20-BGP-16VO1713619 because of the hiring policies of Scott Benza.

**Whether complainant was subjected to discrimination based on reprisal, as evidenced by the following events:**

1. On December 6, 2016, vacancy announcement # SAOW20-17-DJH-VO1861825, which complainant was certified in, was delayed and re-advertised to allow the current certification to expire.

2. On February 20, 2021, complainant was given an unrealistic increase in workload.

Let me briefly explain why this is a similar like claim in this case, since it occurred five years after my initial filing. I was working on a contract in which I was the contract specialist and Stacia Nunn was the contract officer. We received a quote from a male disabled vet vendor which was determined to be fair and reasonable. I discussed the

quote with the Boise VA engineers and they found the quote to be technically acceptable and stated that the vendor had the technical skills to complete the project. I showed this information to Ms. Nunn, and she began to attack the vendor for no apparent reason and stated they were not qualified. I asked her what proof she had, and she never replied. I then went to the SAOW Director Curtis Jordan and stated I currently had an EEOC case pending against Ms. Nunn and others, and that the same tactics that Ms. Nunn was using against this vendor were the same tactics she used against me on a promotion board. Basically, she made up information trying to claim the vendor was not qualified even though the engineers stated they were qualified. I stated that I believed she was hostile towards males and that this issue should be investigated. Mr. Jordan agreed, and the VA investigated and cleared Ms. Nunn of all wrongdoing. The day Mr. Jordan cleared Ms. Nunn of all wrongdoing, she then assigns me an unrealistic workload. I complain to Mr. Jordan and tell him what had happened; he removed the workload and removed Stacia Nunn from the supervisory position and gave her a no contact order. Remember this was the second time I had accused Ms. Nunn of making up false information against males to include myself. Now during the EEOC investigation, Ms. Nunn claimed that she did not assign me the work, that it was Ms. Mullens. Ms. Mullen claims that she did not assign me the workload, that it was Ms. Nunn. In essence I ended up with an unrealistic workload by some unknown natural force. I was unsure if Ms. Nunn would return to the VA as my supervisor so I left the VA and transferred over to GSA. I was just tired of the harassment / unfair treatment that I had received over the five-year period.

While I don't want to argue the case at this point, I believe it will help the defense draft his response if I explain why I believe I was intentionally discriminated against. First, the

plaintiff must establish a prima facie case of discrimination / reprisal which the agency has never disputed. Once this is done, the agency must then rebut the prima facie case by "articulating some legitimate, nondiscriminatory reason for the employee's rejection." The argument here is that the agency has not produced any legitimate, nondiscriminatory reason for the employee's rejection /action. Instead, the agency has just simply falsified information to cover up by deceiving and / or scheming material facts in the case to meet the second prong of the McDonnel Douglas burden shifting analysis. What motive would the agency have for doing this? In the Supreme Court ruling of St. Mary's Honor Center v. Hicks, it created the pretext plus standard. The court in essence granted permission / encouraged the defense to engage in pretext thus placing the burden on the plaintiff that it had to prove that the defense engaged in pretext and then prove that discrimination was the motivating factor for the pretext. This type of behavior goes completely against congressional intent and was ignored in the pretext plus standard. Under 18 U.S.C. § 1001, it's a federal crime to make a false statement / engage in pretext to a government agent when it's related to a federal issue. The statements could be made verbally in person or in writing and do not have to be made under oath in order to get charged under this federal statute, which is punishable by up to five years in prison and a fine of up to $250,000. Willfully engaging in pretext during an EEOC investigation / ROI is punishable under this statue. Now what the agency also knows is that statue is rarely enforced and when this issue was pointed out in my case, it was ignored by the EEOC. Congress' intent for passing this law was that for justice to truly be effective one must have 100% honesty (basically the pretext only standard). If the defense cannot not produce any legitimate, nondiscriminatory reason for the employee's rejection /actions then they would be found guilty under the pretext only standard. Now if the agency decides to willfully engage in pretext to meet the second prong standard in the

McDonnel Douglas framework, then they would be charged under 18 U.S.C. § 1001 and lose the case. Congress never intended to reward anyone for willfully engaging in pretext (pretext plus standard) in any federal investigation. Congress supported the pretext only standard by passing 18 U.S.C. § 1001.

When one combines the pretext plus standard and the fact that no one is enforcing 18 U.S.C. § 1001, then the agency is highly motivated to engage in pretext as a defense / loophole. Now let me give you some concrete examples of this which are all well documented and have been supplied to the defense:

1. Tom Guyer, the Division Chief, made discriminatory comments against older workers. He stated: "if it were up to me, I would get rid of anyone over 50 in leadership roles and replace them with 30–40-year-olds". The ROI stated "Mr. Thomas Guyer, RMO, is no longer employed by the VA and refused to provide testimony. (7-9)" Mr. Thomas Guyer, RMO has retired and is no longer employed by the VA. His contact information was provided by HR and he was contacted to provide testimony; however, he declined the request to provide testimony. (7-9).

   Tom Guyer was the Chair / lead for the promotion panel committee; he selected the promotion board members, tallied the scores, and oversaw the grading sheets. The agency claimed that since he had retired, he was not obligated to provide testimony. This statement is false, and the agency knew it was false. Tom Guyer never retired from civil service; he is now employed by the military as a GS employee and is completely obligated to provide / cooperate with the EEOC investigators. (Note: This meets the standard of direct evidence of discriminatory intent; basically, he was silent during the McDonnel Douglas burden shifting analysis and can be found guilty of discrimination).

2. There is strong evidence the panel notes were falsified. On Aug 15, 2016, the plaintiff filed a FOIA to obtain the panel notes for both selections. From Sept 30, 2016 to Oct 11, 2016 the FOIA office repeatedly confirmed there were no panel notes from the selection board. When the plaintiff received the ROI from the EEOC investigators, all the panel notes appeared. The agency stated there was a signature stamp that proved they were legitimate / authentic and not backdated. Under the Me Too ruling, the exact same thing happened in Mr. Wagstaff's EEOC case. However, the agency forgot that they supplied the exact same set of notes for an MSPB hearing case ten months earlier concerning another employee which contained no date stamp (basically the notes had been altered and a time stamp backdated). When the agency was confronted with this information, they blamed it on a computer glitch / anomaly.

3. The agency knowing and willfully overstated Karen Dailey's qualifications while understating the plaintiff's. Mr. Scott Benza stated that Dailey had "extensive contracting background" at the Department of Defense, had been a Level III and was in the process of meeting the requirements for a similar Agency". Stacia Nunn recalled that Ms. Dailey had a "strong background in supervisor and leadership from the corps of engineers" as well as being a Procurement Quality Analyst". Ms Nunn stated that during the interview, I stated that I had no supervisory experience. Mr. Benza also claimed that I was new to contracting. The agency also stated that I did not hold a warrant.

    None of this is true. On page 317 of the ROI, the grading matrix which Mr. Benza claims to have reviewed, (page 73 of the ROI) it shows that neither of the selectees held a level III certification in contracting (Ashley Nguyen or Karen Dailey). It also shows that Karen Dailey had 8 years of contracting experience, Ashley Nguyen had only 6 years of contracting experience, and that the plaintiff had 7 years of contracting experience in addition to holding a level III certification and a warrant. NOTE: The other male candidate, Donald Morgan, held a level III contracting certification, held the highest possible warrant, and had 10 years of contracting experience and was also non selected.

    In addition if you review the plaintiff's resume, it clearly states: led teams of 300 personnel", " a decade of command experience led teams ranging from 10-300 personnel", " served as the deputy branch manager for the director of operations Pentagon", " acted as the branch chief in the absence of the manager for supply team contracting" , " Commander Air Force Mobility Operations", " Chief Mobility Plans" /Assistant Director of Operations

    The irony of Mr. Benza's / Ms. Nunn's testimony is the plaintiff was the one person who met all of Mr. Benza's criteria for selection. He had a FAC-C level III, a warrant, leadership experience, and 7-8 years of contract experience. The selectees did not have all the criteria Mr. Benza used to justify their selection.

4. ORM was willfully changing pro se claims from discrimination to hostile work environment to get them dismissed. I caught ORM doing this in two other cases and confronted them about it. This is the reply I received below.

*Dear Mr. Richardson,*

*It is never the purpose of the acceptance letter to capture every detail and every participant of a discriminatory allegation. It is meant as a guide for the investigator to know what must be investigated. The acceptance letter is not used as evidence in itself.*

*The investigation, however, is the tool by which details, names and evidence is provided.*

*Accordingly, the acceptance letter as it is written, is sufficient for the*

*purpose of informing the investigator what needs to be investigated.
I will make your comments below a part of the case file.*

ORM clearly knows that the standard / prima facie case for discrimination and hostile work environment are completely different. In my case, neither ORM or the EEOC judge ever amended my claim as I had requested.

5. Mr. Benza claimed he did not know of my EEOC activity when he willfully let the cert expire Dec 6, 2016 as a form of retaliation. Mr. Benza was contacted on Sept 29, 2016 by the ORM investigators and was made aware I had filed an EEOC complaint for my non selection.

6. Ms. Nunn claimed that she did not assign me the increase workload as a form of retaliation that it was Ms. Mullens. Ms. Mullen claims that she did not assign me the workload that it was Ms. Nunn. In essence I ended up with an unrealistic workload by some unknown natural force. In addition, they both claimed that I had volunteered to oversee the Electronic Health Record Modernization and that's how I ended up with the increased workload. Now this statement is also false. I went to the VA IG and filed a complaint months earlier stating that the VA did not assign the proper amount of personnel to complete such a complex project and the project would be in jeopardy due to this shortfall. I also stated that this was a past mistake that the VA had made the last time they had tried to update the patient record system. The IG agreed with me and pointed this out to the VA and tried to halt the program as I had recommended. The VA ignored these warnings and continued with the project which resulted in four veterans' deaths and injured six. The Governor of Washington had to step in and halt the project.

## Conclusion

To date the agency has not supplied a legitimate, nondiscriminatory reason for my non selection nor reprisal. Instead, the agency has simply falsified information during the EEOC investigation to cover up by deceiving and / or scheming material facts in the case to meet the second prong of the McDonnel Douglas burden shifting analysis which is a felony Under 18 U.S.C. § 1001. *The burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason."* Burdine, *450 U. S., at 254. If the defense fails to introduce evidence which,* taken as true, *would* permit *the conclusion that there was a*

*nondiscriminatory reason for the adverse action. In that event, the court must award judgment to the plaintiff as a matter of law under Federal Rule of Civil Procedure 50(a)(1) (in the case of jury trials) or Federal Rule of Civil Procedure 52(c) (in the case of bench trials). See F. James & G. Hazard, Civil Procedure § 7.9, p. 327 (3d ed. 1985).*

Unless the agency can somehow justify their reason for engaging in deliberate pretext during the EEOC investigation, then summary judgement should be granted to the plaintiff and the District Attorney should file charges against the defendants Under 18 U.S.C. § 1001 for knowingly / willfully providing false answers to the EEOC investigators. At some point people will stop filing EEOC complaints if they know the agency can falsify any document /statement they wish and not suffer any criminal or civil penalties (pretext plus standard). Such action meets the standard of reprisal and goes against congressional intent of congress when they passed 18 U.S.C. § 1001.

## Exhausted my Administrative Remedies

I have exhausted my administrative remedies with the EEOC on this matter and wish to pursue this matter in federal court.

I certify under perjury that the above is true and correct.

*[signature]*        July 12, 2023

Paul Richardson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2023, the foregoing Motion To Amend Pleading was filed with the Clerk of the Court and e-mail copy was sent to Peter L Wucetich Assistant US Attorney District of Idaho.

*[signature]*

July 12, 2023